THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER STINE                             :
                                              :
              Plaintiff                       :
                                              :
      v.                                      :       1:09-CV-944
                                              :       (JUDGE MARIANI)
PENNSYLVANIA STATE POLICE, et al.,   :
                                              :
              Defendants                      :

## MEMORANDUM AND ORDER

### I. Introduction

Before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, the Court will grant Defendants' Motion for Summary Judgment (Doc. 95) and deny Plaintiff's Motion for Partial Summary Judgment (Doc. 92).

### II. Statement of Facts and Procedural History

Plaintiff attended Penn State and graduated with a degree in communications, where he twice made the Dean's List. (Doc. 96, Ex. 5, 27:2-9, 29:1). He also held a variety of odd jobs before working for Defendant Bureau, including as a magazine binder (*Id*. at 25:3-12), U.S. Army tactical satellite microwave systems operator, (*Id*. at 15:22-25-16:1-6), sales associate as Montgomery Ward in the appliance division (*Id*. at 16:16-25, 17:1-6), educational credit processor and compliance reviewer at the Pennsylvania Continuing Legal Education Board (*Id*. at 17:7-21), and customer service representative at a satellite television company (*Id*. at 19:2-7, 15-17). Plaintiff was diagnosed and treated for ADD in

1998, while he was working for the Pennsylvania State Police. (*Id.* at 31:6-21-32:1-6; 33:13-15; 34:3-21; Doc. 94-1, 3-5). He worked for the Records and Information Unit – Firearms Record Section from 1996-2004 and the Bureau of Liquor Control Enforcement from 2004-2007 ("Bureau") (*Id.* at 13:12-20, 15:8-10, Ex. 23 to Ex. 5), receiving promotions from both units. (Doc. 96, Ex. 5, 32:23-25-33:1-5; Ex. 2, 202:15-18). He completed his probationary period within six months of starting at the Bureau. (*Id.*, Ex. 4, 48:8-14).

Plaintiff received unfavorable interim and annual reports in January, April, June, and August 2006 from his immediate supervisor, Defendant Joellen Coyle (Legal Assistant Supervisor). (Doc. 96, Exs. 4, 5, 6, and 7 to Ex. 5) (detailing several specific examples of critical mistakes/errors made in his investigations and reports). The first time that Plaintiff mentioned to anyone in the Bureau of his ADD was during the September 6, 2006 pre-disciplinary conference before his written reprimand. (Doc. 96, Ex. 5, 90:13-17, 91:4-8, 120:19-121:3; Ex. 7 to Ex. 5). Plaintiff's union representative was the one who suggested that Plaintiff mention his ADD. (*Id.* at 91:22-92:6). During his time period working for the Bureau, Plaintiff did not see a physician for his ADD and did not take any prescription drugs/medication for it. (*Id.* at 42:3-16).

Plaintiff applied for an accommodation on September 28, 2006. (Doc. 96, Ex. 8 to Ex. 5). In his application, Plaintiff requested the following accommodations: additional time to become more proficient at his job, a detailed process for fact-checking his work, demonstrations, and additional training for any on-the-job changes. (Doc. 94-2, 102-103).

2

Defendant Shannan Zerance, the ADA Coordinator for Defendant Bureau, received the request, researched ADD and ADHD on the internet, and interviewed Plaintiff on October 6, 2006. (Doc. 96, Ex. 6, 25:9-10, 33:19-20; Ex. 5, 112:1-3). Plaintiff stated in his deposition that at the time, he felt he had been able to give a full explanation of the impact ADD had on his work and possible accommodations. (Doc. 96, Ex. 5, 112:18-21). Afterwards, Defendant Zerance gave Plaintiff a medical questionnaire to be filled out by a medical professional who was treating Plaintiff for ADD. Plaintiff identified this person as Sandra Wiley. (Doc. 96, Ex. 6, 38:13-39:6). Ms. Wiley is not a doctor, but a licensed clinical social worker. (Doc. 94, 103U). She suggested "outpatient therapy with specialist for adults who suffer from ADD, also recommend psychiatric evaluation for possible medication management. Could reach greater stabilization in 3 months." (*Id*. at 103R). She recommended accommodations in the form of "time off to attend weekly psychotherapy appts., medication evaluation & ongoing medication management." (*Id*. at 103T).

Defendant Zerance then forwarded Plaintiff's request form and medical questionnaire to the Pennsylvania State Police medical office (Dr. Hand) and psychologist (Dr. Asken). (Doc. 96, Ex. 6, 43:2-3, 44:15-45:1). Dr. Asken said he needed an evaluation of Plaintiff's condition and documentation that the ADD was causing problems at work before he could make any recommendation regarding accommodations. (Doc. 94-2, 131). He also noted that the questionnaire "is from a social worker – not a psychiatrist, psychologist, or ADHD expert." (*Id*.). He further noted that Ms. Wiley "does not offer

evidence of expertise in diagnosis of ADHD," "does not offer a date of an evaluation that made the diagnosis," and "she recommends psychiatric evaluation and possible meds." (*Id*). Dr. Hand said no sort of accommodation was necessary at the time in light of Plaintiff's treatment with only gingko biloba (as opposed to Ritalin), which he found disturbing. (*Id*. at 133-34). He did not doubt the diagnosis, but he saw "no compelling evidence that any major life function or activity is or has been effected [sic]" that would render Plaintiff "disabled under the ADA criteria." (*Id*. at 133). He "would feel otherwise if documentation were provided that showed that [Plaintiff] was receiving accepted medical treatment." (*Id*. at 134) (emphasis in original). Based on this information, Defendant Zerance[1] recommended denying Plaintiff's requested accommodations (*Id*. at 137) to three people: Debra Facciolo (Director, Human Resource Management Division), Linda Bonney (Director, Bureau of Human Resources), and Lieutenant Colonel Sidney Simon (Deputy Commissioner of Administration), who each concurred with the recommendation. (Doc. 96, Ex. 8 to Ex. 6; Ex. 8, ¶ 5; Ex. 11, ¶ 5). Colonel Simon adopted it and denied Plaintiff's request for accommodation. (Doc. 96, Ex. 10 to Ex. 5 – Nov. 27, 2006 letter). The letter denying Plaintiff his requested accommodations informed him that he had the option to request a review of this denial from the Equal Employment Opportunity ("EEO") Officer in Harrisburg. (*Id*. at ¶ 3). Plaintiff chose to do so, and Martin Henry, the Director of the State Police Equal

---

[1] Defendant Zerance testified that she considered the major life activities of working, living alone without assistance, preparing his meals, eating, sleeping, and his academic background. (Doc. 96, Ex. 6, 67:9-22). Plaintiff argues that Defendant Zerance considered only the major life activities of working, living independently, eating, sleeping, education, and taking care of himself. (Doc. 106, at 4).

Employment Opportunity Office, reviewed the denial (Doc. 96, Ex. 13, ¶ 4). On January 18,

2007, he issued a response. (Doc. 96, Ex. 11 to Ex. 5).

> I have reviewed all available evidence relating to this matter with the Department Medical Officer [Dr. Hand]. It is my determination that no violations of [Executive Order 2003-10, Equal Employment Opportunity] or [AR 4-19, Americans with Disabilities Act of 1990] have occurred as there is no evidence to substantiate the requested accommodation. [AR 4-19] requires that an ADA condition affect one or more major life functions, to which you have provided no supporting evidence to justify the requested accommodation.

Plaintiff then filed a second application for accommodations in March 2007. (Doc.

96, Ex. 6, 73:22-24; Doc. 94-2, 190-91). This application included a letter from psychologist

Dr. Pincus, indicating Plaintiff suffered from "mild to moderate" ADD. (Doc. 94-2, 191A). In

his letter, Dr. Pincus wrote that Plaintiff's evaluations had "consisted of clinical interviews

with his therapists Sandra Wiley, MSW and James Eash, LSW as well as psychometric test

data." (*Id.*). Ms. Wiley also attached a letter in support of extra time for Plaintiff to complete

his duties. (*Id.* at 191B). This time, however, Defendant Zerance did not consult with Dr.

Hand or Dr. Asken (Doc. 96, Ex. 6, 81:14-16, 82:18-22) or re-interview Plaintiff (*Id.* at 79:2-

3), and she recommended denying the second request. (*Id.* at 83:16-22). Again, Facciolo,

and Bonney concurred. (Doc. 96, Ex. 11, ¶ 6; Ex. 13 to Ex. 6). Lieutenant Colonel Brown,

then-Deputy Commissioner, rejected Plaintiff's application (Doc. 94-2, 202), and Plaintiff

again requested review of the denial.

Although, Defendant Zerance did not consult with any doctors for Plaintiff's second

application, the EEO office consulted Dr. Hand with Plaintiff's "new" evidence of disability.

In an e-mail dated May 10, 2007, Dr. Hand wrote to Debra Facciolo, who forwarded his e-mail to Kim Kassman, an EEO Specialist, that the letter from Dr. Pincus and Ms. Wiley's recommendations revealed nothing new:

> Each one corroborates that which was already known vis-à-vis that Mr. Stine has had some kind [of] treatment on and off for the past several years for what is felt to be mild to moderate Attention Deficit Disorder-Inattentive Type. The new documents reveal no discernable plan of treatment or prognosis. Neither of the documents offers explanation as to why he has required treatment for this apparently extended period of time.

(Doc. 96, Ex. 12-C). In light of this assessment, Dr. Hand concluded "I find no new information in these documents that would compel me to change my original opinion, which is that I do not believe that Mr. Stine is disabled." (Id.). On May 29, 2007, Henry issued a response stating, "[a]fter discussing this matter with the Pennsylvania State Police Medical Officer, it is my determination that there is no evidence to support your appeal." (Doc. 96, Ex. 15 to Ex. 6).

In the meantime, Plaintiff continued to receive unfavorable reviews from Defendant Coyle (November 3, 2006). (Doc. 96, Ex. 9 to Ex. 5). He was subjected to disciplinary procedures for continued poor work performance, including a level-one and a level-two letter from Defendant Thomas Butler, Defendant Coyle's supervisor and the Director of the Operations Division at the Bureau. (Doc. 96, Ex. 2, 154-158; Doc. 96, Ex. 10, ¶¶ 11-12; Dec. 27, 2006 Level 1 Letter, Ex. 10A; Apr. 5, 2007 Level 2 Letter, Ex. 19 to Ex. 3). Both disciplinary levels were grieved by Plaintiff's union representative. (Doc. 96, Ex. 2, 156-158). Before each instance of discipline, Defendant Butler (Defendant Coyle's immediate

supervisor), held a pre-disciplinary conference with Plaintiff and Plaintiff's union representatives. (Doc. 96, Ex. 10, ¶ 13). At each conference, Plaintiff was given an opportunity to respond. (Doc. 96, Ex. 2, 206-07). On April 16, 2007, Plaintiff attended another pre-disciplinary conference, this time for insubordination to his supervisor. (Doc. 96, Ex. 2, 209-10; Ex. 10, ¶ 14; Ex. 21 to Ex. 5).

Plaintiff was terminated from his job on April 17, 2007 for "inappropriate behavior" toward his supervisor and "overall unsatisfactory work performance." (Doc. 96, Ex. 23 to Ex. 5). That day, Plaintiff grieved his termination under the governing collective bargaining agreement. (Doc. 96, Ex. 25 to Ex. 5). The case proceeded to arbitration where Plaintiff was represented by his union and was allowed to testify. (Doc. 96, Ex. 2, *passim*; Ex. 5, 158-59). The arbitrator denied the Plaintiff's grievance and upheld the decision to discharge him for just cause. (Doc. 96, Ex. 1, at 44).[2]

After several motions to dismiss, the case has been narrowed to three counts: (I) First Amendment and procedural due process claims under 42 U.S.C. § 1983 against all individual Defendants, (II) Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 against Defendant Bureau, and (III) Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131-12165 against Defendant Commissioner of the Pennsylvania State Police Frank Noonan and former Commissioners Pawlowski and Miller.

---

[2] The stipulated issue was "[w]hether the Commonwealth had just cause to discipline/terminate the grievant, and if not, what shall the remedy be?" (Doc. 96, Ex. 1 – Arbitration Opinion and Award). Under *Westmoreland Intermediate Unit #7*, 939 A.2d 855 (Pa. 2007), a deferential "essence test" applies to judicial review of grievance arbitration awards under the Public Employee Relations Act.

7

### III. Analysis

*A. Standard of Review on Cross-Motions for Summary Judgment*

Through summary adjudication the court may dispose of those claims that do not

present a "genuine issue as to any material fact." FED. R. CIV. P. 56(a).  Summary judgment

"should be rendered if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough*

*Corp.*, 901 F.2d 335, 340 (3d Cir. 1990).  "As to materiality, ... [o]nly disputes over facts that

might affect the outcome of the suit under the governing law will properly preclude the entry

of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The

party moving for summary judgment bears the burden of showing the absence of a genuine

issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once

such a showing has been made, the non-moving party must offer specific facts contradicting

those averred by the movant to establish a genuine issue of material fact.  *Lujan v. Nat'l*

*Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  "Inferences should be drawn in the light most

favorable to the non-moving party, and where the non-moving party's evidence contradicts

the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW*

*of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993).  In

this case, the parties have filed cross-motions for summary judgment. (Docs. 32, 40, 45).

According to the Third Circuit:

Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

*Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir.2008) (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968)). Each movant must show that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny the motions. *See Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008). When reviewing each motion, the court is bound to view the evidence in the light most favorable to the nonmovant. FED. R. CIV. P. 56; *United States v. Hall*, 730 F.Supp. 646, 648 (M.D. Pa.1980).

### B. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moved for partial summary judgment on Counts I (42 U.S.C. § 1983 due process claim) and II (Rehabilitation Act good faith interactive process and individualized assessment of his request for accommodation claims).

### Statute of limitations

Defendants argue that Plaintiff filed his claims with the Court too late. (Doc. 108, 3-4). Plaintiff was terminated from his job on April 17, 2007, and he filed this action on May 19, 2009. (Doc. 1). Actions brought under § 1983 (Count I) are governed by the statute of limitations over personal injuries of the forum state. *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003). The applicable statute of limitations period for personal injury

9

actions is two years (42 Pa. C.S. § 5524(7)), and the pendency of administrative

proceedings does not toll it. *DiMedio v. Girard Bank*, 1987 WL 9410 \*2 (E.D. Pa. Apr. 15,

1987) (citing *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454 (1974)). The Court

agrees and finds that Plaintiff's late filing exceeded the statute of limitations.

Actions brought under § 504 of the Rehabilitation Act (Count II) are governed by the

statute of limitations governing personal injuries of the forum state. *Fowler v. UPMC*

*Shadyside*, 578 F.3d 203, 207 (3d Cir. 2009). Plaintiff argues the applicable statute of

limitations is the general catch-all four-year period under federal law (28 U.S.C. §1658), but

he is incorrect, because according to *Fowler*, it is a two-year period unless the plaintiff had

requested the accommodation of a transfer,[3] which would be governed by § 794(d), rather

than § 794(a). Plaintiff did not request the accommodation of a transfer, so *Fowler* is on

point, and Plaintiff's late filing has exceeded the statute of limitations. Therefore, Plaintiff

did not timely file either count on which he moved for partial summary judgment.

### Personal involvement/*respondeat superior*

And yet, assuming Plaintiff timely filed this case, even on the merits there are

numerous deficiencies in his Motion for Summary Judgment on Count I (§ 1983). First,

nearly all of his statements of fact allege actions taken by Defendant Zerance alone in

denying his two applications for accommodation. For liability to attach to a defendant, a

---

[3] Plaintiff did not request a transfer as an accommodation. Rather, in both applications for accommodation, he requested, *inter alia*, help in "reach[ing] job stabilization to better perform the tasks involved with the current job, in addition to any possible future positions as a result of a lateral transfer." (Doc. 94-2, 102, 190). The focus of his request was help in performing his current and future jobs, not a transfer in and of itself.

plaintiff must aver that defendant's personal involvement in the alleged unlawful action. Furthermore, liability cannot be predicated solely on the basis of *respondeat superior*. *Rode v. Dallarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Neither Plaintiff's motion nor his Amended Complaint (Doc. 15) addresses how the other individually named defendants are liable under Count I beyond allegations of collective concerted action against him.

## Due process claim

In Plaintiff's motion for partial summary judgment, he claims that he did not receive adequate procedural due process in connection with his requests for accommodation.[4] (Doc. 93, at 9). To state "a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Chambers ex rel. Chambers v. School Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 194 (3d Cir. 2009) (internal quotation marks omitted). Before evaluating a procedural due process claim, the Court must "first determine whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property." *Id.* "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have

---

[4] The remainder of Plaintiff's § 1983 procedural due process claim (i.e. adequate pre and post-termination procedures) will be addressed in Section C, *infra*.

a legitimate claim of entitlement to it." *Id.* at 195.[5] "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "A state affords requisite due process when it provides reasonable remedies to rectify legal errors by an administrative body." *See MFS, Inc. v. DiLazaro*, 771 F. Supp. 2d 382, 436 (E.D. Pa. 2011) (citing *Cohen v. City of Philadelphia*, 736 F.2d 81, 86 (3d Cir.1984)).

Turning to the merits of his § 1983 claim, the Court notes that Plaintiff has not adequately demonstrated how he was deprived of any procedural entitlements. Plaintiff argues that Defendant Zerance arbitrarily concluded that he was not entitled to accommodations on his first application. He contends, *inter alia*, that Defendant Zerance did not consult with Dr. Hand or Asken about his second application for accommodation and she failed to follow the proper procedures in evaluating that application. To support his arguments, Plaintiff claims that Defendants did not adhere to internal procedures under the Bureau's Administrative Regulations (AR-19). Plaintiff, however, did not attach a copy AR-19 in force at the time of his requests for accommodation, but rather, submitted an outdated

---

[5] "Any benefit that has not commenced, and includes conditions on receipt not yet deemed satisfied, is not a benefit to which a person enjoys an immediate and legitimate right of entitlement." *See Pappas v. City of Lebanon*, 331 F.Supp.2d 311, 317-18 (M.D. Pa. 2004) (distinguishing eligibility for a benefit from entitlement to a benefit) (citing *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 121 S.Ct. 1446, 149 L.Ed.2d 391 (2001) in which the Supreme Court distinguished "present ownership dominion" from a "future claim for payment.").

version.[6]   Assuming that Plaintiff desires the Court to use the standards found in his

attached exhibit, the Court notes that Defendants largely followed the outlined procedures,

and any lapses by Defendant Zerance were rectified by the process afforded to Plaintiff on

appeal to the EEO.  *See MFS, Inc.*, 771 F. Supp. 2d at 436.

Section 19.06(B) of AR 4-19 says that applicants "shall be provided an [ADA]

Accommodation Request," which Plaintiff received, completed, and submitted.  (Doc. 96,

Ex. 8 to Ex. 5).  19.08 says applicants for accommodations will receive a review "by

telephone or in person," which includes how the position would be impacted by the

applicant's disability and what accommodations would be reasonable.  Appendage A

indicates that the reviewer should be the applicant's supervisor.  Plaintiff had his interview

with Defendant Zerance (instead of his supervisor Defendant Coyle) and stated at his

deposition that he was satisfied that he was able to present his case to Defendant Zerance

fully.  (Doc. 96, Ex. 6, 25:9-10, 33:19-20; Ex. 5, 112:1-3, 112:18-21).  The section goes on

to say that the reviewer will forward the application to the ADA Coordinator; in this case,

Defendant Zerance was both reviewer and coordinator.  Section 19.09 says "the

determination of whether or not an individual is disabled rests *exclusively* with the ADA

Coordinator or designee," (emphasis added) and will advise the applicant that he is entitled

to request review with the Governor's Office ADA Director.  Based on the opinions from Drs.

---

[6] Plaintiff filed a version effective July 12, 1996 (Doc. 94, Ex. 2), but Defendants have shown that there was a later version dated October 21, 1998 that was in force at the time of his requests for accommodation.  (Doc. 96, Ex. 18 to Ex. 4).  Defendants, however, submitted only one page of the regulations in force at the relevant time period, so the Court is without a complete version of the appropriate AR 4-19.  There is also no attachment of Executive Order 2003-10, Equal Employment Opportunity.

Hand and Asken (summarized above) and Plaintiff's previously successful work history,

Defendant Zerance recommended denying Plaintiff's requested accommodations. Facciolo,

Bonney, and Lieutenant Colonel Simon concurred. (Doc. 96, Ex. 8 to Ex. 6; Ex. 8, ¶ 5; Ex.

11, ¶ 5). Accordingly, Colonel Simon adopted the recommendation and denied Plaintiff's

request for accommodation. (Doc. 96, Ex. 10 to Ex. 5 – Nov. 27, 2006 letter). As was his

right, Plaintiff requested review of that decision to the EEO, which affirmed the Bureau's

decision. (Doc. 96, Ex. 11 to Ex. 5).

> I have reviewed all available evidence relating to this matter with the Department Medical Officer [Dr. Hand]. It is my determination that no violations of [Executive Order 2003-10, Equal Employment Opportunity] or [AR 4-19, Americans with Disabilities Act of 1990] have occurred as there is no evidence to substantiate the requested accommodation. [AR 4-19] requires that an ADA condition affect one or more major life functions, to which you have provided no supporting evidence to justify the requested accommodation.

Martin Henry's review specifically found no violation of AR 4-19. Plaintiff's second

application for accommodation admittedly met with a limited review.[7] Yet, the problems

associated with his first application remained. Although he attached a letter from a

psychologist with his application, the letter indicated that his treatment continued to be with

---

[7] "The failure of state officials to adhere to strictly procedural state regulations does not implicate any federally protected . . . 'property' interest and thus, . . . does not constitute a violation of the due process clause." *King v. Hilton*, 525 F. Supp. 1192, 1198 (D.N.J. 1981) (citing *United States v. Jiles*, 658 F.2d 194, 200 (3d Cir.1981)). "While *Jiles* involved the failure by state officials to follow state procedures in the context of a criminal proceeding, and thereby implicates the somewhat specialized jurisprudence of the exclusionary rule, the principles . . . are equally applicable to civil actions brought pursuant to 42 U.S.C. § 1983." *Id.* "[A] state does not violate an individual's federal constitutional right to procedural due process merely by deviating from its own established procedures." *Hernandez v. Eaton*, No. 10-994, 2011 WL 673918, at *2 (W.D. Pa. Feb. 7, 2011) ("Thus, violations of state statutes or rules or regulations that require certain procedures, which are not compelled by the Federal Constitution because there is no *liberty* interest that those state mandated procedures protect, do not make out a claim under Section 1983.").

non-medical doctors (Wiley and Eash). (*Id*. at 191A). There was still no indication that he was taking accepted medical treatment/drugs. By Plaintiff's own admission, during his time working for Defendant Bureau, Plaintiff did not see a physician for his ADD and did not take any accepted prescription drugs/medication for it. (*Id*. at 42:3-16). This time, however, Defendant Zerance did not consult with Dr. Hand or Dr. Asken (Doc. 96, Ex. 6, 81:14-16, 82:18-22) or re-interview Plaintiff (*Id*. at 79:2-3), and she recommended denying the second request. (*Id*. at 83:16-22). Again, Facciolo and Bonney concurred (Doc. 96, Ex. 11, ¶ 6; Ex. 13 to Ex. 6). Lieutenant Colonel Brown, then-Deputy Commissioner, rejected Plaintiff's application (Doc. 94-2, 202), and Plaintiff again requested review of the denial.

Although, Defendant Zerance did not consult with any doctors for Plaintiff's second application, the EEO office consulted Dr. Hand with Plaintiff's "new" evidence of disability. In an e-mail dated May 10, 2007, Dr. Hand wrote to Debra Facciolo, who forwarded his e-mail to Kim Kassman, an EEO Specialist, that the letter from Dr. Pincus and Ms. Wiley's recommendations revealed nothing new:

> Each one corroborates that which was already known vis-à-vis that Mr. Stine has had some kind [of] treatment on and off for the past several years for what is felt to be mild to moderate Attention Deficit Disorder-Inattentive Type. The new documents reveal no discernable plan of treatment or prognosis. Neither of the documents offers explanation as to why he has required treatment for this apparently extended period of time.

(Doc. 96, Ex. 12-C). In light of this assessment, Dr. Hand concluded "I find no new information in these documents that would compel me to change my original opinion, which is that I do not believe that Mr. Stine is disabled." (*Id*.). On May 29, 2007, Henry issued a

response stating, "[a]fter discussing this matter with the Pennsylvania State Police Medical Officer, it is my determination that there is no evidence to support your appeal." (Doc. 96, Ex. 15 to Ex. 6).

With respect to the denials of his requests for accommodation, even if Defendant Zerance committed the errors alleged by Plaintiff, review of Zerance's recommendations by Facciolo, Bonney, and Simon/Brown afforded an extra layer of protection and process for Plaintiff. In addition, Plaintiff utilized opportunities to present his case of unfair denial of accommodations through his requests for review to the EEO. The EEO specifically consulted with Dr. Hand on both occasions and noted that there was no violation of AR 4-19 on the first occasion.

Furthermore, Plaintiff is demanding entitlements to procedures that are not contained in the version of AR 4-19 he submitted. Nowhere in AR 4-19 does it require the ADA Coordinator or EEO to consult doctors on requests for accommodation (though the Bureau has recognized it is prudent to do so). It also does not dictate the state medical doctors to contact Plaintiff or his "doctors" to further interview or consult them on his treatment or application. Though the Court is not persuaded that Plaintiff has demonstrated an entitlement to a protected property interest, nevertheless, Defendant Zerance's decision not to consult with doctors again on the second application was not in and of itself a constitutional violation, and it was rectified by the review of the EEO. *See King*, 525 F. Supp. at 1198; *MFS, Inc*, 771 F. Supp. 2d at 436.

## Rehabilitation Act claims

Plaintiff moves for partial summary judgment under the Rehabilitation Act with respect to his claim that he received neither a good faith interactive process in connection with, nor individualized assessments of, his requests for accommodation.[8] (Doc. 93, at 11, 15). Plaintiff complains that under the Rehabilitation Act, (1) Defendants did not engage in the good faith interactive process relative to Plaintiff's requests for accommodation, and (2) he did not receive a fair individualized assessment relative to his disability and requests for accommodation, but the undisputed material facts show otherwise. *See* discussion of review of Plaintiff's requests for accommodation *supra*. Plaintiff cites to 29 C.F.R. 1630.2(o)(3) for the proposition that he was entitled to a good faith interactive process, but a review of that regulation shows that "[t]o determine the appropriate reasonable accommodation it *may* be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation." (emphasis added). Furthermore, Plaintiff did engage in an interactive process with his employer when Defendant Zerance interviewed him regarding his first application. Plaintiff stated in his deposition that at the time, he felt he had been able to give a full explanation of the impact ADD had on his work and possible accommodations. (Doc. 96, Ex. 5, 112:18-21). Plaintiff received a full and fair individualized assessment on his first application when he submitted his application, interviewed with Defendant Zerance, and the state medical doctors reviewed

---

[8] The remainder of Plaintiff's Rehabilitation Act claim will be addressed in Section C, *infra*.

17

his application, which they concluded was inadequately supported by competent medical evidence. They also noted that Ms. Wiley's suggested accommodations (medication and time off to attend therapy) were inconsistent with those that Plaintiff sought (more time to complete work, more training, etc.). Zerance recommended denying the request, a panel of three people agreed, and upon review, so did the EEO.

Plaintiff was informed that he had the option to submit another request for accommodation if he had additional documentation. All he submitted was a letter from Dr. Pincus stating Plaintiff had been treating with Ms. Wiley and James Eash (neither a doctor), and an e-mail from Ms. Wiley, who recommended various accommodations. Based on this second application, Zerance again recommended denial, the panel agreed, and Plaintiff's request was rejected.

Plaintiff then contends that Defendants failed to initiate or request additional information, when the onus was on him to do so through his second application. He accuses Defendants of disregarding this new evidence without the benefit of a medical opinion, but Defendants have submitted evidence in the form of a sworn affidavit from Dr. Hand and an e-mail chain that the EEO Specialist was in contact with Dr. Hand about the second application on review. Whatever procedural defects Plaintiff suffered were compensated by the review procedures available to him.

Therefore, the Court denies Plaintiff's Motion for Partial Summary Judgment on Counts I and II of his Complaint.

### C. Defendants' Motion for Summary Judgment

### Statute of Limitations

Again, Defendants argue that Plaintiff has run afoul of the statute of limitations. The Court agrees, but it will also address the merits of Plaintiff's claims.

### Count I: First Amendment claim

Plaintiff alleges that Defendants retaliated against him for filing grievances and requesting accommodations. (Doc. 96, Ex. 5, 161-165).[9] Plaintiff cannot establish a First Amendment retaliation claim brought under § 1983 (Count I) because he has failed to satisfy the elements of such a claim. A public employee must first establish that he spoke as a "citizen" rather than as an employee. *Garcetti v.Ceballos*, 547 U.S. 410, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). If the employee shows he spoke as a "citizen," he must then show that his speech (1) addressed a matter of public concern, (2) his interest in the speech outweighs the state's interest in promoting workplace efficiency, and (3) the speech was a substantial motivating factor in the alleged retaliation. If the employee meets these three elements, the employer can then rebut by showing it would have reached the same decision regardless of the speech. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

---

[9] In his Brief in Opposition (Doc. 106, at 18-19), Plaintiff claims he was retaliated against for writing to the Governor and the head of the State Police complaining about an unfair work environment. He does not cite to the record, and he did not cite these reasons for the alleged retaliation in his deposition.

First, Plaintiff's grievances were not a matter of public concern because they were relevant only to him. Second, his grievances and requests were not the cause of his unfavorable reviews because he received unfavorable reviews before he filed any grievances or request any accommodations. Third, Plaintiff was acting pursuant to his official duties when he filed the grievances pertaining to disciplinary actions and not acting as a citizen. Furthermore, as discussed above, Plaintiff received adequate procedural due process both before and after his dismissal. Much like his claim of lack of due process relative to his requests for accommodations, Plaintiff has not alleged personal involvement on behalf of many of the individually named Defendants besides Defendants Coyle, Butler, or Zerance other than to assert a broad claim of generalized collective effort amongst the individual defendants to deny him accommodations and terminate his employment.

### Count I: Pre and post-termination procedural due process

Unlike the procedural due process claim regarding the requests for accommodation, the parties do not dispute that Plaintiff has a protected property interest in his employment. However, according to the Third Circuit, "[w]here a due process claim is raised against a public employer, and grievance and arbitration procedures are in place, . . . those procedures satisfy due process requirements even if the hearing conducted by the Employer ... [was] inherently biased." *Dykes v. Se. Pennsylvania Transp. Auth.*, 68 F.3d 1564, 1571 (3d Cir. 1995). To the extent that Plaintiff argues that he received inadequate pre and post-termination procedural due process, the evidence is undisputed that Plaintiff

was represented by his union representative at each pre-disciplinary hearing, was given opportunities to speak at each one, that he grieved both of the disciplinary letters, and the parties went to arbitration after he was terminated. The Court also notes there is a final and binding arbitration decision in favor of Defendants on whether there was just cause to terminate Plaintiff's employment. (Doc. 96, Ex. 1, at 44).

## Count II: Discrimination

Defendants move for summary judgment under the Rehabilitation Act for discrimination arising out of Plaintiff's ADD. For Plaintiff to establish a *prima facie* case under the Rehabilitation Act, a plaintiff must show (1) that he has a disability, (2) that he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer, (3) that he was nonetheless terminated or otherwise prevented from doing his job. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The Act defines "disability" to mean "a physical or mental impairment that constitutes or results in a substantial impediment to employment," or "a physical or mental impairment that substantially limits one or more major life activities of such individual." 29 U.S.C. § 705(9)(A),(B). On the record, there is insufficient evidence of substantial limitations of a major life activity.

A diagnosis of ADD is not necessarily a disability under the RA or ADA, and a plaintiff is not substantially limited when there is evidence on the record that he was able to complete numerous academic and job-related activities. *Collins v. Prudential Inv. and Ret.*

*Servs.*, No. 03-2356, 2005 U.S. App. LEXIS 148 (3d Cir. Mar.11, 2005) (reviewing the plaintiff's testimony about her own extensive and successful academic and work history). In *Collins*, the plaintiff asserted substantial limitations in the major life activities of thinking, learning, concentrating, and remembering. The Third Circuit said, at worst, "the impact on thinking, learning, concentrating and remembering can be accurately characterized as moderate. However, '[h]ealth conditions that cause moderate limitations on major life activities do not constitute disabilities under the ADA. To hold otherwise could expand the ADA to recognize almost every working American as disabled to some degree.'" *Id.* at *11. In this case, there was overwhelming evidence that Plaintiff was not substantially limited in the major life activities of thinking, learning, concentrating, or working based on his own accounts of his successful academic[10] and work histories, including promotions, and his previous two years of work experience at the Bureau before he encountered work performance problems in 2006.

The parties do not dispute that Plaintiff is diagnosed with ADD. However, Defendants concluded that Plaintiff's ADD did not rise to the level of a disability as defined by the Rehabilitation Act because he was not substantially limited in a major life activity. Because Plaintiff did not meet the threshold showing of disability, Defendants did not reach the question of what accommodations would be appropriate for him. There is also

---

[10] Plaintiff stated at his deposition that he had a problem with math while at Penn State and Harrisburg Area Community College. He took one math course over because he did not get a good grade. (Doc. 96, Ex. 5, 29:23-24, 30:23). Despite problems with math, he twice made the Dean's List and successfully completed his degree without ever having to request accommodations. (*Id.* at 15-22, 27:2-9, 29:1).

insufficient evidence of discrimination under the Rehabilitation Act (Count II) or ADA (Count III) because Plaintiff cannot show that Defendants were aware of any disability before they began disciplinary proceedings against him. The evidence shows that Plaintiff had already received four unfavorable reviews (Doc. 96, Exs. 4, 5, 6, and 7 to Ex. 5) before he raised the issue of his ADD at a pre-disciplinary conference in September 2006. (Doc. 96, Ex. 5, 90:13-17, 91:4-8, 120:19-121:3; Ex. 7 to Ex. 5). The court will not repeat its previous discussion of the evidence of whether Defendant is substantially limited in a major life activity (*see* Section B) except to add that Plaintiff successfully completed his six-month probationary period (*Id.*, Ex. 4, 48:8-14) and had worked at his job with the Bureau for over two years before he ever requested an accommodation. (*Id.*, Ex. 5, 13:12-20, 90:13-17). In light of the discussions in Sections B and C *supra*, the undisputed evidence warrants granting summary judgment in Defendants' favor.

### Count III: Title II of the ADA

Finally, Judge Conner had ruled previously that Title II of the ADA (Count III) did not create a cause of action for employment discrimination and had dismissed the claim against Defendant Bureau.[11] (Doc. 58, at 11-12). However, the Order did not specifically address

---

[11] In his Brief in Opposition (Doc. 106), Plaintiff claims that he lacked access to "services, programs or activities of a public entity" (42 U.S.C. § 12121) under the ADA, asserting he would have a cause of action. As an example, he states he did not have access to the State Employee Assistance Program ("SEAP"), but he does not say what feature of the program to which he was denied access, nor does he cite to the record to support this assertion. To the contrary, Plaintiff stated at his deposition that he saw counselors through the SEAP program beginning in 1998 at least up to the time of his deposition. While at the Bureau, Plaintiff's counselor through SEAP was James Eash, a licensed social worker. (Doc. 96, Ex. 5, 31:17-37:20). Plaintiff's own Statement of Facts also confirms that Sandra Wiley was a treatment provider through SEAP. (Doc. 94, ¶ 27). Dr. Pincus's letter identified both as people with whom Plaintiff had been treating. (Doc. 94-2, 191A).

whether the same claim against Defendant Commissioners Miller and Pawlowski were dismissed. Defendants ask the Court to enforce the same Order and dismiss the Title II claim against Miller, Pawlowski, and the current Commissioner, Frank Noonan, on the same grounds. The Court will grant this request. For all of the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment.

## IV. Conclusion

The Court grants Defendants' Motion for Summary Judgment (Doc. 95) and deny Plaintiff's Motion for Partial Summary Judgment (Doc. 92) because Plaintiff's action is time-barred. Alternatively, Plaintiff's case lacks merit because he received a full and fair consideration on his first application for accommodation, he had adequate procedural due process afforded to him in connection with his requests for accommodation as well as his termination, he did not sufficiently plead any First Amendment retaliation claim, he submitted insufficient evidence that he was substantially limited in a major life activity under both the Rehabilitation Act and ADA, Defendants were unaware of his ADD diagnosis until after he had received several unfavorable reviews, and he fails to allege personal involvement beyond a vague theory against most of the individually named defendants. Therefore, the Court denies Plaintiff's Motion for Partial Summary Judgment (Doc. 92) and grants Defendants' Motion for Summary Judgment (Doc. 95). An appropriate order follows.

Robert D. Mariani
United States District Judge

24

## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER STINE                          :
                                           :
        **Plaintiff**                    :
   **v.**                                 :     **1:09-CV-944**
                                           :     **(JUDGE MARIANI)**
PENNSYLVANIA STATE POLICE, et al.,  :
                                           :
                                           :
       **Defendants**                  :

## ORDER

**AND NOW**, to wit, this **21ST DAY OF MARCH, 2012,** upon consideration of

Defendants' Motion for Summary Judgment (Doc. 95) and Plaintiff's Motion for Partial

Summary Judgment (Doc. 93) and all accompanying briefs, **IT IS HEREBY ORDERED**

**THAT:**

1. Defendants' Motion for Summary Judgment (Doc. 95) is **GRANTED**.

2. Plaintiff's Motion for Partial Summary Judgment (Doc. 93) is **DENIED**.

3. Judgment is entered in **FAVOR OF DEFENDANTS** and **AGAINST PLAINTIFF**.

4. The Clerk of Court is hereby directed to **CLOSE** the case.

Robert D. Mariani
United States District Judge